UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY VAN KEMPEN,<br><br>              Plaintiff,<br><br>      v.<br><br>MATHESON TRI-GAS, INC.,<br><br>              Defendant. | Case No.  15-cv-00660-HSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 45 |

Before the Court is the motion for preliminary approval of a collective and class action settlement filed by Plaintiff Roy Van Kempen ("Plaintiff").  Dkt. No. 45 ("Mot.").  The proposed settlement would resolve Plaintiff's wage-and-hour claims against Defendant Matheson Tri-Gas, Inc. ("Defendant") under the Fair Labor Standards Act, 29 U.S.C. § 207, *et seq.* ("FLSA"), and various California statutes.

For the reasons set forth below, the Court **DENIES** Plaintiffs' motion for preliminary approval of collective and class action settlement.  The parties may correct the deficiencies in the settlement agreement noted herein and refile an approval motion for expedited consideration.

I.      **BACKGROUND**

A.      **Factual Allegations and Procedural History**

Defendant employed Plaintiff as an hourly, non-exempt delivery driver of industrial and medical gases.  Dkt. No. 48 ("Van Kempen Decl.") ¶¶ 3-4.  In his operative complaint, Plaintiff alleges that Defendant intentionally failed to include the non-discretionary bonuses he received in calculating his rate of overtime pay.  On that basis, Plaintiff claims that Defendant systematically underpaid his overtime wages in violation of § 207(a)(1) of the FLSA and California Labor Code § 510.  Dkt. No. 26 ("Am. Compl.") ¶¶ 38-39.  Plaintiff further alleges that Defendant had a "use-

*United States District Court*
*Northern District of California*

1  it-or-lose it" vacation time policy by which accrued vacation time was automatically forfeited if

2  not used within a specified time period. *Id.* ¶ 65. Plaintiff claims that this vacation-time policy

3  violated California Labor Code § 227.3. *Id.* ¶ 66.[1] These claims are asserted in both Plaintiff's

4  individual capacity and on behalf of all other persons similarly situated. *Id.* ¶ 9.

5      Defendant removed this action from state court under federal question, diversity, and Class

6  Action Fairness Act jurisdiction. Dkt. No. 1 & Ex. A. In this Court, Plaintiff amended his initial

7  complaint to add new state law claims and propounded formal and informal written discovery on

8  Defendant. *See* Dkt. Nos. 26 & 49 ("Hague Decl.") ¶¶ 4, 13. The parties then participated in a

9  private mediation before a retired state court judge, and the case settled. *Id.* ¶ 5; Dkt. No. 42.

10  **B.     Related Class Action Settlement**

11      Before turning to the terms of the proposed settlement agreement, the Court must address

12  the class action settlement in a partially overlapping lawsuit, *Ambriz v. Matheson Tri-Gas, Inc.*,

13  No. 2:14-cv-04546 (C.D. Cal. Feb. 4, 2016).[2] In that case, the plaintiffs, who were also employed

14  as delivery drivers by Defendant, asserted a variety of wage-and-hour claims under California law.

15  Dkt. No. 50, Ex. 2. The parties entered into a class action settlement, over which the court granted

16  final approval before the instant settlement motion was heard by this Court. Dkt. No. 54 ¶ 4.

17      The *Ambriz* settlement class includes "all current and former drivers who were employed

18  by Defendant from March 5, 2010 through June 25, 2015." Dkt. No. 55, Ex. 1 ¶ 2. It releases, by

19  the account of the parties to this action, every claim asserted in the operative complaint but for the

20  FLSA overtime claim and the unpaid, accrued vacation time claim under California Labor Code §

21  227.3 discussed above. Mot. at 7; *see also* Dkt. No. 50, Ex. 3 ¶¶ 52-53. The instant settlement,

---

[1] Plaintiff's other asserted claims are not included in the proposed settlement, as explained below.
[2] Plaintiff requests judicial notice of materials from the *Ambriz* action, including the motion for preliminary approval of class action settlement, the operative complaint, and a declaration filed in support of preliminary approval. Dkt. No. 50 & Exs. 1-3. Plaintiff also submits two supplemental declarations of counsel that attach the minute order and order granting final approval of the class action settlement in *Ambriz*. Dkt. Nos. 54 & 55, Exs. 1-2. The Court takes judicial notice of these materials to the extent that they explain the procedural posture of this case, but not for the truth of the matters asserted therein. *See Tigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (materials in other judicial proceedings, including filings and orders, are the proper subject of judicial notice when those proceedings are directly related to matters at issue); *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1117 n.14 (9th Cir. 2005) (explaining that it is inappropriate to take judicial notice of another court's orders for the truth of the matters asserted therein); *see also* Fed. R. Evid. 201(b).

United States District Court
Northern District of California

therefore, purportedly functions only to "fill gaps" in the *Ambriz* settlement.  *See* Mot. at 1.

C.       **Overview of the Proposed Settlement**

With that background in mind, the Court now describes the key terms of the proposed class action settlement in this case. *See* Dkt. No. 54, Ex. 2 ("SA").

Class Definitions: There are three groups of proposed class members: (1) a FLSA overtime group comprised of all persons employed by Defendant nationwide and classified as non-exempt, who worked overtime while entitled to non-discretionary bonus pay; (2) a California overtime class comprised of persons employed by Defendant in California and classified as non-exempt, who worked overtime while entitled to non-discretionary bonus pay; and (3) a California vacation-time class comprised of all persons employed by Defendant in California, who accrued vacation time but forfeited it.  *Id.* ¶ 8.  The class period for all three proposed classes runs from January 9, 2011, through the date that the Court enters final approval of the class actions settlement.  *Id.* ¶ 10. In total, the parties estimate that there are approximately 2,400 putative class members.  *Id.* ¶ 9.

Monetary Relief: Defendant will pay a gross total of $370,000 to resolve this action, less the requested $103,000 in attorneys' fees and $15,000 in litigation costs, a $5,000 incentive award for Plaintiff, settlement administration costs not anticipated to exceed $25,000, and 75% of the $5,000 penalty under the Private Attorneys General Act, Cal. Lab. Code § 2698, *et seq.  Id.* ¶ 23. Based on these assumptions, the parties estimate that the putative classes will receive a total of $217,650.  *Id.* ¶ 34(a).  Fifty-two percent of this amount is allocated to the FLSA nationwide and California overtime classes.  *Id.* ¶ 33.  The remaining 48% is allocated to the California vacation-time class.  *Id.*  Each individual putative class member's payment within each proposed class will be calculated by dividing the net settlement amount by the total number of weeks that all members of the relevant proposed class worked during the class period and then multiplying that number of compensable workweeks that the individual worked.  *Id.* ¶ 34(b)(i).  Regardless of the outcome of this formula, each putative class member will receive a monetary payment of at least $25.  *Id.*

*Cy Pres* Recipients: Settlement checks left uncashed for 180 days by California class members will revert to California's Division of Labor Standards Enforcement unclaimed wage fund.  *Id.* ¶ 34(b)(vii).  Settlement checks similarly left uncashed by FLSA class members will

3

revert in equal part to the Employee Rights Advocacy Institute for Law & Policy and the UCLA Institute for Research on Labor and Employment.  *Id.*

Release: There is both a class and individual component to the proposed release.  Under the current settlement agreement, putative class members would release:

> "[A]ny and all applicable claims . . . of any nature and description whatsoever, whether known or unknown . . . whether under federal, state, and/or local law, which were asserted in the Action or could have been asserted against the Released Parties *arising out of, derived from, or related to in any way their compensation by the Released Parties*, or to the claims, matters, transactions or occurrences referred to in the operative Complaint during the Claims Period."

*Id.* ¶¶ 63-64 (emphasis added).  Released claims also include derivative violations of California's unfair competition law and any and all related PAGA penalties, as well as any claims "pertaining to . . . wages . . . whether known or unknown . . . based on claims related to or arising under those allegations in the operative Complaint[.]"  *Id.*  Plaintiff would also release these same claims, but "[i]t is understood and agreed that the [settlement] will not release Named Plaintiff from claims, if any, for workers compensation, unemployment, or disability benefits of any nature."  *Id.* ¶ 66.  It does not appear that this carve-out for Plaintiff applies to the putative classes as well.

Class Notice: The parties intend to send class notice packages to all last-known addresses of putative class members by US mail.  *Id.* ¶ 38.  As part of that class notice package, there are two different class notice forms.  *See id.* Exs. 2a & 2b.  One notice is apparently for nationwide FLSA overtime putative class members and the other is for California putative class members.

Opt-Out Procedure: Putative members of the California overtime and vacation classes have the right to opt out of the settlement by submitting a request for exclusion form within 60 days after the settlement administrator transmits class notice.  *Id.* ¶ 51.  If five percent of either the California overtime or vacation putative class opts-out of the settlement, Defendant shall have the unilateral right to terminate the settlement agreement.  *Id.* ¶¶ 42, 55.

Putative members of the FLSA class must affirmatively opt in to participate in the FLSA settlement, as required by 29 U.S.C. § 216(b).  FLSA overtime putative class members must opt in "by cashing/depositing his/her Settlement Payment."  *Id.* ¶ 53; *see also id.* ¶ 32(a).

Class Representative and Class Counsel: Plaintiff asks to be appointed class representative

4

and for Sutton Hague Law Corporation to be appointed class counsel. *Id.* ¶¶ 26, 36.

Incentive Award: Plaintiff seeks a $5,000 incentive award as class representative. *Id.* ¶ 26.

Attorneys' Fees and Costs: Plaintiff's counsel requests attorneys' fees equal to 28% of gross settlement amount and litigation costs up to $15,000. *Id.* ¶ 24. Defendant does not oppose this request. *Id.* If the fees and costs award that the Court approves is less than the requested amount, the difference will revert to Defendant and not to the putative classes. *Id.*

## II.     PROVISIONAL CLASS CERTIFICATION

As a prerequisite to settlement approval, Plaintiff seeks provisional certification of the nationwide FLSA overtime class and provisional certification of the California overtime and vacation classes. Mot. at 19-23. The Court discusses the propriety of each in turn.

### A.     Nationwide FLSA Class

Plaintiff seeks to conditionally certify for settlement purposes a nationwide FLSA overtime class comprised of all persons employed by Defendant nationwide and classified as non-exempt, who worked overtime while entitled to non-discretionary bonus pay. Mot. at 19-20; SA ¶ 8.

The FLSA requires employers to pay covered employees overtime compensation of one and one-half times the regular rate of pay for all hours worked in excess of forty hours per week, unless an exemption applies. 29 U.S.C. § 207(a)(1). The regular rate of pay incorporates bonuses that are non-discretionary. *See* 29 U.S.C. § 207(e)(3); *Dietrick v. Securitas Sec. Servs. USA, Inc.*, 50 F. Supp. 3d 1265, 1273 (N.D. Cal. 2014). To ensure compliance with this requirement, the FLSA authorizes actions by employees to recover unpaid overtime wages and an equal amount as liquidated damages for violation of the FLSA's overtime provisions. 29 U.S.C. § 216(b).

The FLSA also authorizes employees to bring a collective action on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b). Although neither the FLSA nor the Ninth Circuit has defined "similarly situated," courts in this circuit generally apply a "two-step approach to determine whether a collective action is proper, involving initial notice to prospective plaintiffs, followed by a final evaluation whether such plaintiffs are similarly situated." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004); *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119, 2014 WL 587135, at *5 (N.D. Cal. Feb. 13, 2014) (at step one, "courts require

United States District Court
Northern District of California

United States District Court
Northern District of California

1   little more than substantial allegations, supported by declarations or discovery, that 'the putative

2   class members were together the victims of a single decision, policy, or plan.'") (citation omitted).

3       Settlement of an FLSA claim, including a collective action claim, requires court approval.

4   *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *see also Dunn v. Teachers*

5   *Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016)

6   ("Most courts hold that an employee's overtime claim under FLSA is non-waivable and, therefore,

7   cannot be settled without supervision of either the Secretary of Labor or a district court.") (citing

8   *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982)).  When the

9   parties seek settlement approval of an FLSA collective action claim before seeking certification of

10  a collective action, courts in this circuit first consider whether certification is appropriate and then

11  whether the proposed settlement is substantively acceptable.  *See, e.g.*, *Tijero v. Aaron Bros., Inc.*,

12  301 F.R.D. 314, 322-34 (N.D. Cal. 2013); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 837

13  (N.D. Cal. 2010) ("Even when the parties settle, the court must make some final class certification

14  finding before approving a collective action settlement.") (quotation marks and citation omitted).

15      Applying this framework, the Court finds that conditional certification of the nationwide

16  FLSA overtime class is appropriate.  Plaintiff has shown through his pleadings and declarations

17  that non-exempt delivery drivers were subject to a common policy instituted by Defendant that did

18  not factor in bonus pay into the putative class's overtime pay rate.  *See* Am. Compl. ¶ 15 ("[A]ll

19  non-exempt employees of [Defendant] throughout the nation were subject to the same policies and

20  practices with respect to the calculation of overtime wages due to such employees[.]"); Hague

21  Decl. ¶ 16(a) (declaring that Defendant "maintains[] that the bonus payments omitted from the

22  [FLSA overtime] Settlement Class members' regular rates of pay were discretionary, and were

23  thus not required to be included in the regular rate of pay calculation."); *see also Benedict*, 2014

24  WL 587135, at *5.  Accordingly, the Court conditionally certifies the proposed FLSA class.

25      **B.      California Overtime and Vacation Classes**

26      Plaintiff also seeks to provisionally certify for settlement purposes two California classes.

27  The first proposed class asserts a claim under California Labor Code § 510, which provides that

28  "any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no

United States District Court
Northern District of California

less than one and one-half times the regular rate of pay for an employee." Like the FLSA, § 510 requires that non-discretionary bonuses are included in the regular rate of pay. *Provine v. Office Depot, Inc.*, No. 2012 WL 2711085, at *3 (N.D. Cal. Jul. 6, 2012); *Marin v. Costco Wholesale Corp.*, 169 Cal. App. 4th 804, 807 (2008). The second proposed class asserts a claim under California Labor Code § 227.3, which proscribes employers from adopting a 'use it or lose it' vacation policy that confiscates employees' accrued vacation time if left unused within a specific time period. *Reznik v. Int'l Bus. Machines Corp.*, No. 15-CV-02419, 2016 WL 3162229, at *2 (N.D. Cal. Jun. 7, 2016) (quoting *Rhea v. Gen. Atomics*, 227 Cal. App. 4th 1560, 1571 (2014)).

Federal Rule of Civil Procedure 23 governs class actions, including class certification. To warrant class certification, a plaintiff bears the burden of showing that she has met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). Under Rule 23(a), a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." If each of these prerequisites is satisfied, a court must also find that the plaintiff "satisf[ies] through evidentiary proof" one of the three subsections of Rule 23(b) before certifying the proposed class. *Comcast Corp. v. Behrend*, — U.S. ——, 133 S. Ct. 1426, 1432 (2013). Where a plaintiff seeks to certify a class under Rule 23(b)(3), he must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

      1.    Rule 23(a) Certification Prerequisites

      a)    *Numerosity*

Rule 23(a)(1) requires that membership in a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general rule, classes of forty or more are considered sufficiently numerous." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008). Plaintiff represents that there are an estimated 2,400 members who would

United States District Court
Northern District of California

partake in the settlement, but does not detail the breakdown of members in each of the proposed settlement classes. *See* SA ¶ 9 ("'Settlement Classes' shall mean all of the individuals within the FLSA Plaintiff Group and CA Vacation Class, collectively and includes approximately 2,400 Class Members"). Because the Rule 23 analysis must be applied to each of the California classes, it would have been helpful for the Court to know the estimated membership breakdown by class.

Nonetheless, the Court presumes that each of the classes is sufficiently numerous from the fact that the settlement is monetarily divided almost evenly between the FLSA and California overtime classes (52%) and the California vacation class (48%). *See id.* ¶ 33. The Court therefore finds sufficient basis to infer that each proposed class meets the numerosity requirement.

b)   *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A question is common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Indeed, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted; ellipsis and italics original). Even a single common question is sufficient to satisfy Rule 23(a)(2). *Id.* at 359.

Commonality is satisfied in this case because there are a host of common questions that would generate classwide resolution. For example, common questions include: (1) whether the putative California overtime class members' bonus pay was discretionary; (2) further, whether Defendant excluded that bonus pay from those same putative class members' regular rate of pay; and (3) with respect to the California vacation class, whether Defendant had a "use-it-or-lose-it" vacation policy that caused putative class members to forfeit their accrued, unused vacation time. Questions of whether class members were subject to the same wage and hour policies, like these, are sufficient to satisfy commonality. *See Tijero*, 301 F.R.D. at 321 (holding that the question of whether class members "were subject to the same unlawful wage and hour polices" satisfied the commonality requirement). For these reasons, the Court finds that commonality is met.

c)      Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation and quotation omitted).  Under the "permissive standards" of Rule 23(a)(3), "representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (internal quotation omitted); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.") (citation omitted).

Here, Plaintiff's claims are factually and legally co-extensive with the putative California classes.  He alleges that Defendant's failure to include non-discretionary bonus pay in calculating his regular rate of pay caused him and the putative members of the proposed California overtime class to receive improperly low overtime wages.  He also alleges that Defendant had an unlawful vacation policy that forfeiting his and the putative members of the proposed California vacation class's accrued, unused vacation time.  These allegations are sufficient to satisfy the typicality requirement for both proposed California classes. *See Tijero*, 301 F.R.D. at 322 (holding that typicality is satisfied where Plaintiff alleges he and putative class members "were not properly compensated due to the same unlawful policies and practices of Defendant").

d)      Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).  Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.  With regard to the first question, class representatives fail to meet the adequacy standard when the "conflicts between the class

United States District Court
Northern District of California

1    members are serious and irreconcilable." *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D.

2    623, 629 (N.D. Cal. 2005) (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)).  The second question

3    determines whether "the named plaintiff's claim and the class claims are so interrelated that the

4    interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel.*

5    *Co. of Sw. v. Falcon*, 457 U.S. 147, 158, n.13 (1982).

6          With respect to conflicts of interest, the Court is unaware of any actual conflicts of interest

7    in this matter.  A potential conflict could flow from the fact that Plaintiff has negotiated a separate

8    release from that of the putative classes.  *Compare* Am. Compl. ¶¶ 63-64 *with id.* ¶ 66.  But the

9    Court finds that this potential conflict is insufficient to override adequacy because it is not "serious

10   and irreconcilable." *See Breeden*, 229 F.R.D. at 629.  The Court does, however, further address

11   this issue in the context of its substantive analysis of the settlement agreement.  With respect to the

12   question of vigorous prosecution, the Court finds that Plaintiff's claims are sufficiently interrelated

13   to ensure that the putative class' claims are protected, as discussed above in the typicality context.

14   *See Tijero*, 310 F.R.D. at 322 (sufficient interrelatedness exists in overtime class action where the

15   named plaintiff seeks to represent "all non-exempt employees that were improperly compensated

16   due to the same unlawful policies and practices of Defendant").  The Court finds that Plaintiff's

17   counsel would also adequately represent the putative classes because of their experience handling

18   wage-and-hour class actions, often serving as lead counsel.  Dkt. No. 47 ¶¶ 5-6.  Accordingly, the

19   adequacy of representation requirement is satisfied with respect to Plaintiff and his counsel.

20         In sum, the Court finds that Plaintiff has satisfied the four prerequisites of Rule 23(a).

21               2.    Rule 23(b)(3) Certification

22         Plaintiff seeks to certify the three proposed classes as damages classes under Rule 23(b)(3),

23   requiring him to satisfy its predominance and superiority requirements.  Fed. R. Civ. P. 23(b)(3).

24               a)    *Predominance*

25         Rule 23(b)(3) requires that common questions predominate over individual questions.  "An

26   individual question is one where members of a proposed class will need to present evidence that

27   varies from member to member, while a common question is one where the same evidence will

28   suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized,

10

class-wide proof." *Tyson Foods*, 136 S. Ct. at 1045 (quotation marks and citation omitted). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (quotation marks and citation omitted). "Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Courts analyze each claim element to "determine which are subject to common proof and which are subject to individualized proof." *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 600 (N.D. Cal. 2010).

The Court finds that common issues predominate over individual issues in the proposed California classes. With respect to the proposed California overtime class, common questions that arise under California Labor Code § 501 include: (1) whether delivery drivers uniformly received non-discretionary bonus pay; and (2) whether Defendant had a uniform policy of excluding that non-discretionary bonus pay from the putative class's regular rate of pay. With respect to the proposed California vacation class, common questions that arise under California Labor Code § 227.3 include: (1) whether Defendant had a 'use-it-or-lose-it' vacation policy that confiscated the putative class's accrued but unused vacation time within a certain specified period; and (2) whether Defendant uniformly implemented that policy across the putative class. The only individual question is the amount of damages to which each putative class member is entitled. But individualized damages inquiries alone are insufficient to defeat Rule 23(b)(3) certification in the Ninth Circuit. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986-88 (9th Cir. 2015).

Accordingly, the Court finds that common questions about the uniform implementation of employment policies predominate over individual questions for both of the proposed California classes. *See Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) ("Class certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established."); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1066 (N.D. Cal. 2007) ("In the context of overtime pay litigation, courts have often found that common issues predominate where an employer treats the putative class members uniformly with respect to compensation.").

United States District Court
Northern District of California

b)     *Superiority*

Rule 23(b)(3) also tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  To determine whether a class action is a superior method of adjudicating plaintiffs' claims, courts consider four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  *Id.*; *Zinser*, 253 F.3d at 1190–92.

The Court finds that superiority is met in this case.  First, the damages that are at issue in this case are likely not great enough for individual putative class members to desire to litigate their own individual actions against Defendant.  The parties estimate that the average recovery for each putative class member would be approximately $50 for an overtime class member and $500 for a vacation class member.  Hague Decl. ¶ 16.  These amounts suggest that the incentive to litigate any individual claim is low and that class treatment is superior.  *See Zinser*, 253 F.3d at 1191.  Second, given that another court in this circuit has already finally approved a related employment class action settlement on behalf of many putative class members in this action, the putative class has shown that it finds class treatment of its wage-and-hour claims against Defendant preferable to other forms of dispute resolution.  *See* Mot. at 7; *see also Zinser*, 253 F.3d at 1191.  And third, from a case management perspective, concentrating over 2,400 individual cases into a single class action is the most economical way to resolve common questions at issue about Defendant's bonus, overtime, and vacation policies, as discussed above.  *See Wells Fargo*, 527 F. Supp. 2d at 1068-69.

In sum, because the Court finds that predominance and superiority are present in this case, provisional certification of a damages class under Rule 23(b)(3) is appropriate.

3.     Appointment of Class Representatives and Class Counsel

Because the Court finds that Plaintiff meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiff as class representative.

Additionally, when a court certifies a class, it must also appoint class counsel.  Fed. R. Civ.

P. 23(c)(1)(B).  Factors that courts should consider when making that decision include:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)   counsel's knowledge of the applicable law; and
> (iv)   the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  But a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

In light of the fact that Plaintiffs' counsel has experience litigating wage and hour class actions, and given its diligence in prosecuting this action to date, *see* Dkt. No. 47 ¶¶ 5-6, 12; Hague Decl. ¶¶ 8-10, the Court appoints Sutton Hague Law Corporation as class counsel.

## III.    PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional certification is appropriate, the Court now considers whether the parties' class action settlement should be preliminarily approved on its substantive terms.

### A.    Legal Standard

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable."  *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008). Courts generally apply the same standard to FLSA collective action settlements.  *See, e.g.*, *Tijero*, 301 F.R.D. at 323-25 (applying Rule 23(e) standard to an FLSA collective action settlement).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotation marks and citation omitted).  In those situations, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth Headset*

United States District Court
Northern District of California

13

1    *Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

2       Courts scrutinize whether the proposed settlement: (1) appears to be the product of serious,

3 informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper

4 preferential treatment to class representatives or other segments of the class; and (4) falls within

5 the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079

6 (N.D. Cal. 2007).  In passing judgment on a proposed settlement, courts lack the authority to

7 "delete, modify or substitute certain provisions.  The settlement must stand or fall in its entirety."

8 *Hanlon*, 150 F.3d at 1026.

9      **B.**     **Analysis**

10        1.    The Settlement Process

11       The first factor the Court considers is the means by which the parties settled the action.

12 "An initial presumption of fairness is usually involved if the settlement is recommended by class

13 counsel after arm's-length bargaining."  *Harris*, 2011 WL 1627973, at *8.  Plaintiff's counsel

14 avers that both parties vigorously litigated the case before a successful mediation.  Hague Decl. ¶

15 4.  That mediation was conducted before the Hon. Peter D. Lichtman (Ret.), a former state court

16 judge with experience in California wage-and-hour litigation.  *Id.*  Based on this information, the

17 Court finds that the settlement process weighs in favor of approving the proposed settlement.

18        2.    Obvious Deficiencies

19       The second factor the Court considers is whether there are obvious deficiencies in the

20 settlement agreement.  The Court finds two obvious deficiencies in the settlement agreement that

21 defeat approval: (1) the FLSA opt-in mechanism; and (2) the scope of the proposed release.

22       First, the settlement agreement provides that nationwide FLSA overtime putative class

23 members must opt-in to the class by cashing or depositing their settlement check.  SA ¶¶ 8, 32, 53.

24 This violates the FLSA.  Unlike class actions, putative FLSA class members must opt-in in order

25 to participate and be bound by the judgment.  *McElmurry v. U.S. Bank Nat'l. Ass'n*, 495 F.3d

26 1136, 1139 (9th Cir. 2007).  The FLSA specifies how a putative class member must opt-in: "No

27 employee shall be a party plaintiff to any such action *unless he gives his consent in writing* to

28 become such a party *and such consent is filed in the court* in which such action is brought."  29

United States District Court
Northern District of California

U.S.C. § 216(b) (emphasis added). In this case, FLSA putative class members are not properly directed to give their consent in writing and have it filed with the Court in order to join the class. The parties provide no support for their assertion that having class members sign, then cash, checks with purported opt-in language printed on the back, SA ¶ 32(a), complies with the plain-language requirements of § 216(b). The parties may correct this deficiency by directing FLSA putative class members to send an opt-in form back to the settlement administrator and then having Plaintiff file them with the Court.

Second, class members would release "*any and all applicable claims . . . of any nature and description whatsoever, whether known or unknown . . .* whether under federal, state, and/or local law, which were asserted in the Action *or could have been asserted* against [Defendant, among others] *arising out of, derived from, or related to in any way their compensation* by [Defendant, among others], *or* to the claims, matters, transactions or occurrences referred to in the operative Complaint during the Claims Period." *Id.* ¶¶ 63-64 (emphasis added). The released claims also include derivative violations of California's unfair competition law and any and all related PAGA penalties, as well as any claims "pertaining to . . . wages . . . whether known or unknown . . . based on claims related to or arising under those allegations in the operative Complaint[.]" *Id.*

Courts in this district routinely reject proposed class action settlement agreements that try to release all claims in a wage-and-hour case relating to compensation as overbroad and improper. *See, e.g.*, *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at **6-7 (N.D. Cal. Apr. 15, 2014) (rejecting proposed release of "[a]ny and call claims for wage payment . . . that were raised or that could have been raised" because "[t]he release goes beyond the scope of the present litigation"); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012) ("[O]verly broad release provisions, which release a Defendant from all claims to settle their wage claims, including claims that are unrelated to the claims asserted in the complaint, are improper in FLSA and class action settlements."); *see also Tijero v. Aaron Bros., Inc.*, No. C 10-01089, 2013 WL 60464, at *9 (N.D. Cal. Jan. 2, 2013) (rejecting proposed release because it did not track the plaintiffs' allegations and, as a result, released unrelated claims); *Kakani v. Oracle Corp.*, Case No. 06-cv-06493, 2007 WL 1793774, at

15

**2-3 (N.D. Cal. 2007) (rejecting a proposed settlement in part because of the "draconian scope" of the proposed release, which, among other things, released the defendant from any and all claims that were asserted or could have been asserted in the complaint whether known or unknown).

The release in the instant settlement agreement is similarly defective.  To explain why, the Court looks first to the carve-out that Plaintiff secured for himself personally.  Unlike the other putative class members, "the Agreement will not release Named Plaintiff from claims, if any, for workers compensation, unemployment, or disability benefits of any nature."  SA ¶ 66.  Apart from the fact that this is impermissible preferential treatment, as discussed below, the scope of the release for proposed class members appears broad enough on its face to include workers compensation, unemployment, and disability benefit claims.  Those types of claims have nothing to do with this litigation; the putative class would release those potential claims in exchange for nothing at all.  On the other hand, if the release does not include these claims, then the carve-out for the Plaintiff should be unnecessary.  The parties may correct this deficiency by having the scope of the release track the claims asserted in this case.[3]

Accordingly, the Court denies Plaintiff's motion for preliminary approval.  But the Court will continue to consider the other aspects of the settlement agreement to provide guidance to the parties should they file a renewed motion.

### 3.   Preferential Treatment

Under the third factor, the Court examines whether the settlement agreement provides preferential treatment to any class member.  Here, too, the proposed settlement agreement fails.  The release in the settlement agreement gives improper, preferential treatment to Plaintiff.  As noted above, on the face of the settlement agreement, participating class members would release

---

[3] At oral argument, both parties stated their view that the release does not extend beyond claims that were asserted or could have been asserted in the action.  Notably, the release language in the proposed class notice does appear to be appropriately limited in this manner. Dkt. 49, Ex. 2a at Question 14 ("[Y]ou will be releasing your right to bring your own lawsuit against [Defendant] for the same claims that [Plaintiff] asserted in his Complaint, or to bring claims that Plaintiff could have asserted based on the allegations in his Complaint," and specifically describing the asserted claims).  But the Court finds the controlling release language in the settlement agreement to be substantially broader on its face.  If the parties intend to bind class members to an appropriately narrower release, they need to conform the language of the settlement agreement to clearly reflect as much.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    all claims "arising out of, derived from, or related to in any way their compensation by

2    [Defendant, among others]."  SA ¶ 63.  Plaintiff's release, however, is both broader and narrower:

3    it is broader in that he executes a general release, but it is narrower in that "the Agreement will not

4    release Named Plaintiff from claims, if any, for workers compensation, unemployment, or

5    disability benefits of any nature."  This carve-out allows Plaintiff to keep a variety of unrelated

6    compensation claims, but these claims are seemingly "related to in any way . . . compensation"

7    and therefore apparently would be released by the putative class.  No settlement agreement that

8    provides the named plaintiff with a narrower release than the putative class will be approved

9    unless there is some unique justification.  The parties may correct this deficiency by drafting a

10   release that gives Plaintiff a release that is either equal to or broader in scope than the release

11   executed on behalf of the putative classes.

12                      4.        Settlement Within Range of Possible Approval

13            The fourth and final factor that the Court considers is whether the settlement is within the

14   range of possible approval.  "To determine whether a settlement 'falls within the range of possible

15   approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected

16   recovery balanced against the value of the settlement offer.'"  *Schuchardt v. Law Office of Rory*

17   *W. Clark*, No. 15-cv-01329, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (citation omitted).

18            Here, Plaintiff's counsel avers that the nationwide FLSA overtime class will receive the

19   full value of their estimated unpaid overtime ($96,000) plus a compromised amount for liquidated

20   damages ($17,178 of $96,000 maximum).  Hague Decl. ¶ 16(a); *see also* 29 U.S.C. § 216 (c)

21   (employees who do not receive proper overtime wages may recover liquidated damages that equal

22   the amount of actual damages).  The Court finds that this is a fair and reasonable result because

23   the class would receive all of their actual damages in addition to some special damages.

24            Plaintiff's counsel does not explain, however, if any additional money is allocated to the

25   California overtime class.  If the nationwide FLSA overtime class is completely co-extensive with

26   the California overtime class, a recovery for both classes might be duplicative.  But it is currently

27   unclear to the Court, based on the materials before it, whether that is the case.  Accordingly, the

28   Court cannot find that the California overtime settlement, apparently valued at $0, is fair and

United States District Court
Northern District of California

1   reasonable.[4]

2       With respect to the California vacation class, Plaintiff's counsel avers that the class will

3   receive $104,472 out of a maximum class recovery of $191,500.  Hague Decl. ¶ 16(b).  The Court

4   finds that this proposed settlement is fair and reasonable given the inherent risks of litigation and

5   the possibility that the Court could find these claims precluded by the *Ambriz* settlement.

6       Finally, although Plaintiff's moving papers state that it is the parties' belief that the *Ambriz*

7   settlement releases all of the claims set forth in the operative complaint but for the overtime and

8   vacation time claims discussed above, *see* Mot. at 1, Plaintiff's counsel avers in a declaration that

9   the parties have agreed to fully compromise claims for late and improper termination wages under

10  California Labor Code § 203.  Hague Decl. ¶ 16(c).  Plaintiff's counsel values those claims at

11  $110,000, but contends that full compromise of their value is appropriate because of the difficulty

12  in showing the willfulness necessary to trigger liability under § 203.  *Id.*  In any renewed motion

13  for preliminary settlement approval, the Court would like further information about whether these

14  claims are included within the scope of the *Ambriz* settlement to determine whether this reflects a

15  reasonable compromise of the putative class members' § 203 claim.

16      In sum, the Court finds that the nationwide FLSA class and the California vacation class

17  settlements fall within the acceptable range of approval, but there is insufficient information to

18  make the same determination about the California overtime class.

19          5.   *Cy Pres* Distribution

20      The Court must also evaluate whether the parties' proposed *cy pres* awards are appropriate.

21  A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members.

22  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).  Indeed, "[n]ot just any worthy recipient

23  can qualify as an appropriate cy pres beneficiary."  *Id.*  "[T]here must be a driving nexus between

24  the plaintiff class and the cy pres beneficiaries."  *Id.* (citation omitted).  That is to say, a *cy pres*

25  award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the

26

27  ─────────────────────
    [4] Counsel's declaration only discusses an "Overtime Class" and a "Vacation Class."  Hague Decl.
28  ¶ 16.  It is not clear to the Court how this description maps to the three "Settlement Classes"
    described in the settlement agreement.  SA ¶ 9.

silent class members, and must not benefit a group too remote from the plaintiff class[.]" *Id.* (quotation marks and citations omitted).

Here, the parties have selected the Employee Rights Advocacy Institute for Law & Policy and the UCLA Institute for Research on Labor and Employment as *cy pres* recipients in the event that FLSA putative class members do not cash their settlement checks within 180 days. SA ¶ 34(b)(viii). The former entity advocates for employee rights[5] and the latter is "a multidisciplinary research center dedicated to the study, teaching, and discussion of labor and employment issues."[6] These entities fully share the objectives of the FLSA in promoting. For that reason, the Court finds that there is a sufficient nexus between these two *cy pres* recipients and the putative FLSA overtime class. Similarly, California class members who do not cash their settlement checks within 180 days will revert to California's Division of Labor Standards Enforcement unclaimed wage fund. *Id.* ¶ 34(b)(vii). This entity also fully shares the objectives of the California wage-and-hour statutes at issue. Accordingly, the Court would approve all of the *cy pres* recipients.

## IV.   PROPOSED CLASS NOTICE PLAN

Although the Court denies preliminary approval of the proposed settlement agreement, it discusses the parties' proposed class notice program to provide guidance going forward.

For Rule 23(b)(3) class actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members[.]" Fed. R. Civ. P. 23(c)(2)(B). And the "FLSA requires the court to provide potential plaintiffs 'accurate and timely notice concerning

---

[5] *About*, The Employee Rights Advocacy Institute for Law & Policy, http://employeerightsadvocacy.org/about/ (last visited July 26, 2016).
[6] *About IRLE*, UCLA Institute for Research on Labor and Employment, http://www.irle.ucla.edu/about/ (last visited July 26, 2016).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the pendency of the collective action, so that they can make informed decisions about whether to

2    participate.'" *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting

3    *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

4         As an initial matter, while the settlement agreement itself appears to contemplate a single

5    class notice form, the parties have attached two different class notice forms to the settlement

6    agreement.  *Compare* SA ¶¶ 12, 39 *with id.*, Exs. 2a & 2b.  One form appears to be for members of

7    both the California overtime and vacation classes and the other appears to be for members of the

8    nationwide FLSA overtime class.  The Court is not able to determine whether all putative class

9    members would receive both or one of these forms.  The parties should make clear in any renewed

10   motion for preliminary approval who will receive which form(s) and why.

11        With respect to the substantive contents of the notice forms, the parties will first need to

12   amend the FLSA notice form to reflect necessary changes to the opt-in mechanism, as discussed

13   above.  The parties will also need to ensure that the scope of the release described in the notice

14   accurately and clearly tracks the scope of the (revised) release in the settlement agreement.

15        Turning to the issue of settlement administration, the parties have agreed that a third party,

16   Simpluris, would administer the class notice process.  SA ¶ 35.  Specifically, Simpluris would

17   prepare individualized class notice forms, perform an initial national change of address search, use

18   standard skip-tracing devices to obtain forwarding addresses for old addresses, mail class notice to

19   putative class members via first-class US mail, track undelivered notices, process any exclusion

20   requests, establish a settlement fund, administer payments, and establish a toll-free number to take

21   inquiries from class members.  *Id.* ¶¶ 20, 35, 38-46.  The Court finds that Simpluris is qualified to

22   perform the tasks associated with administering the notice plan would approve Simpluris as the

23   administrator on a renewed approval motion.  The parties ask to have $25,000 allocated from the

24   gross settlement fund to pay for settlement administration costs.  While this amount is higher than

25   many class action settlements that the Court reviews, the parties have agreed that any leftover

26   money shall revert to the class fund.  *Id.* ¶ 35.  That is acceptable to the Court.

27   **V.      AWARD OF ATTORNEYS' FEES AND COSTS**

28        The settlement agreement provides that Plaintiff will file a motion for attorneys' fees equal

to twenty-eight percent (28%) of the gross settlement amount and costs of $15,000.  SA ¶¶ 24, 25.

Defendant has agreed not to oppose said motion.  *Id.*  The Court defers considering this issue.

## VI.   CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Plaintiff's motion for preliminary approval of class and collective action settlement.  The parties may correct the deficiencies noted above and refile their approval motion for expedited consideration.

**IT IS SO ORDERED.**

Dated: 8/1/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

21