UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROY VAN KEMPEN,

      Plaintiff,

      v.

MATHESON TRI-GAS, INC.,

      Defendant.

Case No. 15-cv-00660-HSG

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Re: Dkt. No. 60

Pending before the Court Before is Plaintiff Roy Van Kempen's ("Plaintiff") revised motion for preliminary approval of a collective and class action settlement. Dkt. No. 60 ("Mot."). The proposed settlement would resolve Plaintiff's wage-and-hour claims against Defendant Matheson Tri-Gas, Inc. ("Defendant") under the Fair Labor Standards Act, 29 U.S.C. § 207, et seq. ("FLSA"), and various California statutes. Pursuant to Civil Local Rule 7–1(b), this motion is deemed suitable for disposition without oral argument. After careful consideration of the settlement agreement and the parties' arguments, the Court GRANTS Plaintiff's motion for the reasons set forth below.

I.  **BACKGROUND**

    a.  **Factual Allegations and Procedural History**

Defendant employed Plaintiff as an hourly, non-exempt delivery driver of industrial and medical gases. Dkt. No. 48 ("Van Kempen Decl.") ¶¶ 3-4. In his operative complaint, Plaintiff alleges that Defendant intentionally failed to include the non-discretionary bonuses he received in calculating his rate of overtime pay. On that basis, Plaintiff claims that Defendant systematically underpaid his overtime wages in violation of § 207(a)(1) of the FLSA and § 510 of the California Labor Code. Dkt. No. 26 ("Am. Compl.") ¶¶ 38-39, 49. Plaintiff further alleges that Defendant had a "use-it-or-lose it" vacation time policy by which accrued vacation time was automatically

1    forfeited if not used within a specified time period.  *Id.* ¶ 65.  Plaintiff claims that this vacation-

2    time policy violated California Labor Code § 227.3.  *Id.* ¶ 66.[1]  These claims are asserted in both

3    Plaintiff's individual capacity and on behalf of all other persons similarly situated.  *Id.* ¶ 9.

4         Defendant removed this action from state court under federal question, diversity, and Class

5    Action Fairness Act jurisdiction.  Dkt. No. 1 & Ex. A.  In this Court, Plaintiff amended his initial

6    complaint to add new state law claims and propounded formal and informal written discovery on

7    Defendant.  *See* Dkt. Nos. 26 & 49 ("Hague Decl.") ¶¶ 4, 13.  The parties then participated in a

8    private mediation before a retired state court judge, and the case settled.  *Id.* ¶ 5; Dkt. No. 42.

9         Plaintiff filed an unopposed motion for preliminary approval of class and collective action

10   settlement on January 10, 2016.  *See* Dkt. No. 45.  The Court denied Plaintiff's motion on August

11   1, 2016.  *See* Dkt. No. 57.  In its decision, the Court (1) granted provisional class certification of

12   the nationwide FLSA overtime class, and California overtime and vacation classes, *see id.* at 12;

13   (2) appointed Plaintiff as class representative, *id.*, and Sutton Hague Law Corporation as class

14   counsel, *id.* at 13; and (3) denied preliminary settlement approval due to the proposed FLSA opt-in

15   agreement and release language, *id.* at 14, 16.  The Court also noted problems with several other

16   portions of the proposed settlement agreement, including its (1) provision of preferential treatment

17   to Plaintiff, *id.* at 16-17; (2) failure to explain whether the California overtime class would receive

18   settlement payments within the range of possible approval, *id.* at 17; (3) failure to specify whether

19   certain claims fall within the related class action settlement described below, *id.* at 18; and (4)

20   failure to specify which putative class members would receive the proposed notice forms and why,

21   *id.* at 20.

22        **b.    Related Class Action Settlement**

23        Before turning to the terms of the proposed settlement agreement, the Court addresses the

24   class action settlement in a partially overlapping lawsuit, *Ambriz v. Matheson Tri-Gas, Inc.*, No.

25   2:14-cv-04546 (C.D. Cal. Feb. 4, 2016).[2]  In that case, the plaintiffs, who were also employed as

26

27   _____

   [1] Plaintiff's other asserted claims are not included in the proposed settlement, as explained below.
   [2] Plaintiff previously requested judicial notice of materials from the *Ambriz* action, including the
28   motion for preliminary approval of class action settlement, the operative complaint, and a
   declaration filed in support of preliminary approval.  Dkt. No. 50 & Exs. 1-3.  Plaintiff also

United States District Court
Northern District of California

delivery drivers by Defendant, asserted a variety of wage-and-hour claims under California law. Dkt. No. 50, Ex. 2.  The parties entered into a class action settlement, as to which the Court granted final approval before the original settlement motion in this case was heard by this Court. Dkt. No. 54 ¶ 4.

The *Ambriz* settlement class includes "all current and former drivers who were employed by Defendant from March 5, 2010 through June 25, 2015."  Dkt. No. 55, Ex. 1 ¶ 2.  It releases, by the account of the parties to this action, every claim asserted in the operative complaint except for "those causes of action related to unpaid accrued vacation days and unpaid overtime based on a miscalculation of the regular rate of pay."  Dkt. No. 46 at 7; *see also* Dkt. No. 50, Ex. 3 ¶¶ 52-53; *see also* Dkt. No. 66 at 7.  The instant settlement, therefore, purportedly functions only to "fill gaps" in the *Ambriz* settlement.  *See* Dkt. No. 46 at 1, 7.

## II.    OVERVIEW OF THE PROPOSED SETTLEMENT

With this background in mind, the Court now describes the key terms of the proposed class action settlement in this case. *See* Mot. Ex. 1 ("SA").

 Class Definitions: There are three groups of proposed class members: (1) an FLSA overtime group, comprised of all current and former non-exempt employees of Defendant nationwide who worked overtime while entitled to non-discretionary bonus pay and who opt in to the group; (2) a California overtime class, comprised of all current and former non-exempt employees of Defendant in California who worked overtime while entitled to non-discretionary bonus pay and who do not opt out of the settlement; and (3) a California vacation-time class, comprised of all persons employed by Defendant in California who accrued vacation time but forfeited it.  *Id.* ¶ 8.  The class period for all three proposed classes runs from January 9, 2011, through the date that the Court enters final approval of the collective and class action settlement. *Id.* ¶ 10.  In total, the parties estimate that there are approximately 2,400 putative class members.

---

submitted two supplemental declarations of counsel that attach the minute order and order granting final approval of the class action settlement in *Ambriz*.  Dkt. Nos. 54 & 55, Exs. 1-2.  In its previous order denying the parties' motion for preliminary approval, the Court took judicial notice of these materials to the extent they explained the procedural posture of this case, but not for the truth of the matters asserted therein.  *See* Dkt. No. 57 at 2 n.2.

United States District Court
Northern District of California

*Id.* ¶ 9.

    <u>Monetary Relief</u>: Defendant will pay a gross total of $370,000 to resolve this action, less attorneys' fees up to $103,600 and up to $15,000 in litigation costs, a $5,000 incentive award for Plaintiff, settlement administration costs not anticipated to exceed $25,000, and 75% of the $5,000 penalty under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2699. *Id.* ¶¶ 23-28. Based on these assumptions, the parties estimate that the putative classes will receive a total of $217,650. *Id.* ¶ 34(a). Fifty-two percent of this amount is allocated to the FLSA nationwide and California overtime classes. *Id.* ¶ 33. The remaining 48% is allocated to the California vacation class. *Id.* Each individual putative class member's payment within each proposed class will be calculated by dividing the net settlement amount by the total number of weeks that all members of the relevant proposed class worked during the class period and then multiplying that number of compensable workweeks that the individual worked. *Id.* ¶ 34(b)(i). Regardless of the outcome of this formula, each putative class member will receive a monetary payment of at least $25. *Id.*

    *Cy Pres* <u>Recipients</u>: Settlement checks left uncashed for 180 days by California class members will revert to California's Division of Labor Standards Enforcement unclaimed wage fund. *Id.* ¶ 34(b)(vii). Settlement checks similarly left uncashed by FLSA class members will revert in equal part to the Employee Rights Advocacy Institute for Law & Policy and the UCLA Institute for Research on Labor and Employment. *Id.*

    <u>Release</u>: There is both a class and individual component to the proposed release. Putative class members would release "any and all applicable claims . . . which were asserted in the Action or could have been asserted against the Released Parties based on the claims, matters, transactions or occurrences referred to in the operative Complaint during the Claims Period (hereinafter "Released Claims"). *Id.* ¶ 66. Released Claims also include "claims under or pertaining to the Fair Labor Standards Act . . . any and all PAGA penalties or other relief under California Business and Professions Code Section 17200 et seq [that could have been raised in the operative Complaint] . . . and all rights under California Civil Code Section 1542." *Id.* Plaintiff, as class representative, would release these same claims. *Id.* ¶ 69. In addition, the agreement states that "[i]t is understood and agreed that the [settlement] will not release Named Plaintiff from claims, if

United States District Court
Northern District of California

1    any, for worker's compensation, unemployment, or disability benefits of any nature." *Id.* ¶ 69.

2           Class Notice: The parties intend to send class notice packages to all last-known addresses

3    of putative class members by US mail within fourteen calendar days of the Court's order granting

4    preliminary approval. *Id.* ¶¶ 38, 39.  As part of that class notice package, there are two different

5    class notice forms. *See* Dkt. No. 66 Exs. 1 & 2.  One notice is for nationwide FLSA overtime

6    putative class members and the other is for California putative class members. *Id.* at 9-10.

7           Opt-Out & Opt-In Procedures: Putative members of the California overtime and vacation

8    classes have the right to opt out of the settlement by submitting a request for exclusion form

9    within 60 days after the settlement administrator transmits class notice. SA ¶ 47.  If five percent

10   of either the California overtime or vacation putative classes opt out of the settlement, Defendant

11   shall have the unilateral right to terminate the settlement agreement. *Id.* ¶¶ 42.

12          Putative members of the FLSA class must affirmatively opt in to participate in the FLSA

13   settlement, as required by 29 U.S.C. § 216(b). *Id.* ¶ 43.  FLSA overtime putative class members

14   must opt in by submitting a Claim Form to the Claims Administrator not later than 60 calendar

15   days from the mailing of the Notice Packet. *Id.*; *see also id.* ¶ 32.

16          Class Representative and Class Counsel: Plaintiff has been appointed class representative

17   and Sutton Hague Law Corporation has been appointed class counsel. *See* Dkt. No. 57 at 12-13.

18          Incentive Award: Plaintiff seeks a $5,000 incentive award as class representative. SA ¶ 26.

19          Attorneys' Fees and Costs: Plaintiff's counsel requests attorneys' fees equal to 28% of the

20   gross settlement amount and litigation costs up to $15,000. *Id.* ¶¶ 24, 25.  Defendant does not

21   oppose this request. *Id.*  If the fees and costs award that the Court approves is less than the

22   requested amount, the difference will revert to Defendant and not to the putative classes. *Id.*

23   **III.    PROVISIONAL CLASS CERTIFICATION**

24          The Court previously granted provisional certification of the nationwide FLSA overtime

25   and California overtime and vacation classes under FRCP 23(a) and (b). *See* Dkt. No. 57 at 10,

26   12.  The Court also previously granted provisional certification of Plaintiff as class representative,

27   and Sutton Hague Law Corporation as class counsel. *See id.* at 13.

28   //

United States District Court
Northern District of California

## IV.     PRELIMINARY SETTLEMENT APPROVAL

Having already granted provisional certification, the Court now considers whether the parties' class action settlement should be preliminarily approved on its substantive terms.

### A.     Legal Standard

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable."  *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008). Courts generally apply the same standard to FLSA collective action settlements.  *See, e.g.*, *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 323-25 (N.D. Cal. 2013) (applying Rule 23(e) standard to an FLSA collective action settlement).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotation marks and citation omitted).  In those situations, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Courts scrutinize whether the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  In passing judgment on a proposed settlement, courts lack the authority to "delete, modify or substitute certain provisions.  The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

//

B.      **Analysis**

1.      The Settlement Process

The first factor the Court considers is the means by which the parties settled the action. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. C−08−5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. April 29, 2011). Plaintiff's counsel avers that both parties vigorously litigated the case before a successful mediation. Hague Decl. ¶ 4. That mediation was conducted before the Hon. Peter D. Lichtman (Ret.), a former state court judge with experience in California wage-and-hour litigation. *Id.* Based on this information, the Court finds that the settlement process weighs in favor of approving the proposed settlement.

2.      Obvious Deficiencies

The second factor the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court previously found two obvious deficiencies in the original settlement agreement that defeated approval: (1) the FLSA opt-in mechanism failed to require class members to give their consent in writing and have it filed with the Court; and (2) the scope of the proposed release was overly broad. *See* Dkt. No. 57 at 14-15. Plaintiff has now corrected those deficiencies.

First, the settlement agreement provides that nationwide FLSA overtime putative class members must opt in to the class by returning a Claim Form to the Settlement Administrator. SA ¶¶ 8, 32, 43. Class counsel will then file the Claim Forms with the Court. *Id.* ¶ 46. This comports with the FLSA, which specifies how a putative class member must opt-in: "No employee shall be a party plaintiff to any such action *unless he gives his consent in writing* to become such a party *and such consent is filed in the court* in which such action is brought." 29 U.S.C. § 216(b) (emphasis added).

Second, the revised release language is no longer overly broad, and only requires class members to release "any and all applicable claims . . . which were asserted in the Action or could have been asserted against the Released Parties based on the claims, matters, transactions or occurrences referred to in the operative Complaint during the Claims Period." SA ¶ 66. Released

Claims include "claims under or pertaining to the Fair Labor Standards Act . . . any and all PAGA penalties or other relief under California Business and Professions Code Section 17200 et seq [that could have been raised in the operative Complaint] . . . and all rights under California Civil Code Section 1542." *Id.*  While the release still includes an apparent carve-out for Named Plaintiff that states that "the Agreement will not release Named Plaintiff from claims, if any, for worker's compensation, unemployment, or disability benefits of any nature," the portion of the release pertaining to the putative class members does not appear to be any narrower, as it specifically tracks the claims asserted in the case and would therefore also not release class members' worker's compensation, unemployment, or disability benefits claims.  *See* SA ¶ 66; *see also* Dkt. No. 60 at 2 (Supp. Brief) ("the Settlement makes no attempt whatsoever to cause Class Members to release any claims that would fall outside of the four corners of the Complaint, and tracks directly to Plaintiff's allegations.  Limited as such, the Settlement could not possibly reach claims for worker's compensation, unemployment, and/or disability benefit claims, as none of the allegations of Plaintiff's Complaint implicate any such claims.").  Accordingly, the Court finds that there are no obvious deficiencies in the proposed agreement.

### 3.   Preferential Treatment

Under the third factor, the Court examines whether the settlement agreement provides preferential treatment to any class member.  While the Court previously found that the original agreement impermissibly granted Plaintiff a narrower release than the rest of the putative class, the Court now finds that the revised release language remedies the Court's prior concerns for the reasons discussed above.  *See* Dkt. No. 57 at 16-17.

### 4.   Settlement Within Range of Possible Approval

The fourth and final factor that the Court considers is whether the settlement is within the range of possible approval.  "To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'"  *Schuchardt v. Law Office of Rory W. Clark*, No. 15-cv-01329, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (citation omitted).

Here, Plaintiff's counsel contends that the nationwide FLSA overtime and California

United States District Court
Northern District of California

overtime classes will together receive 52% of the Net Settlement Amount, totaling approximately $113,178. *See* Dkt. No. 66 at 4. This amount will be split evenly between the two groups, with each receiving approximately $56,589. *See id.* This will provide overtime class members with the full value of their estimated unpaid overtime ($96,000) plus a compromised amount for liquidated damages ($17,178 of $96,000 maximum). Hague Decl. ¶ 16(a); *see also* 29 U.S.C. § 216 (c) (employees who do not receive proper overtime wages may recover liquidated damages that equal the amount of actual damages). The Court preliminarily finds that this is a fair and reasonable result because class members would receive all of their actual damages in addition to some special damages.

With respect to the California vacation class, Plaintiff's counsel avers that the class will receive $104,472 out of a maximum potential class recovery of $191,500. Hague Decl. ¶ 16(b). The Court preliminarily finds that this proposed settlement is fair and reasonable given the inherent risks of litigation, and the possibility that the Court could find these claims precluded by the *Ambriz* settlement.

Finally, although Plaintiff's moving papers state that it is the parties' belief that the *Ambriz* settlement releases all of the claims set forth in the operative complaint but for the overtime and vacation time claims discussed above, *see* Mot. at 1, Plaintiff's counsel avers in a declaration that the parties have agreed to fully compromise claims for late and improper termination wages under California Labor Code § 203. Hague Decl. ¶ 16(c). Plaintiff's counsel values those claims at $110,000, but contends that full compromise of their value is appropriate because of the difficulty in showing the willfulness necessary to trigger liability under § 203. *Id.* The Court was thus initially unable to determine whether these claims were included within the scope of the *Ambriz* settlement. However, the parties have now clarified via supplemental briefing that "the Settlement Class Members' claim for 203 penalties on the basis of *any* unpaid wages and/or unpaid overtime . . . are entirely extinguished, thus supporting Class Counsel's decision to fully compromise such claims and assign them no value." Dkt. No. 66 at 7. The Court thus preliminarily finds that this is an acceptable compromise of the putative class members' § 203 claim.

In sum, the Court finds that each class settlement falls within the acceptable range of

approval.

5.      *Cy Pres* Distribution

The Court must also evaluate whether the parties' proposed *cy pres* awards are appropriate. A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). Indeed, "[n]ot just any worthy recipient can qualify as an appropriate cy pres beneficiary." *Id.* "[T]here must be a driving nexus between the plaintiff class and the cy pres beneficiaries." *Id.* (citation omitted). That is to say, a *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class[.]" *Id.* (quotation marks and citations omitted).

Here, the parties have selected the Employee Rights Advocacy Institute for Law & Policy and the UCLA Institute for Research on Labor and Employment as *cy pres* recipients in the event that FLSA putative class members do not cash their settlement checks within 180 days. SA ¶ 34(b)(vii). The former entity advocates for employee rights[3] and the latter is "a multidisciplinary research center dedicated to the study, teaching, and discussion of labor and employment issues."[4] These entities fully share the objectives of the FLSA in promoting workers' rights. For that reason, the Court finds that there is a sufficient nexus between these two *cy pres* recipients and the putative FLSA overtime class. Similarly, California class members who do not cash their settlement checks within 180 days will revert to California's Division of Labor Standards Enforcement unclaimed wage fund. *Id.* ¶ 34(b)(vii). This entity also fully shares the objectives of the California wage-and-hour statutes at issue. Accordingly, the Court approves of all of the *cy pres* recipients.

## IV.   PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be

---

[3] *About*, The Employee Rights Advocacy Institute for Law & Policy, http://employeerightsadvocacy.org/about/ (last visited July 26, 2016).

[4] *About IRLE*, UCLA Institute for Research on Labor and Employment, http://www.irle.ucla.edu/about/ (last visited July 26, 2016).

United States District Court
Northern District of California

United States District Court
Northern District of California

identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members[.]" Fed. R. Civ. P. 23(c)(2)(B). In addition, the "FLSA requires the court to provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

The parties have attached two different class notice forms to the settlement agreement. *See* Dkt. No. 66 Exs. 1 & 2. One form is for members of both the California overtime and vacation classes and the other is for members of the nationwide FLSA overtime class. The FLSA overtime class will receive a copy of Exhibit 1, which includes an "FLSA Opt-In Claim Form," while the California overtime and vacation classes will receive a copy of Exhibit 2, which includes an "Exclusion form." *Id.* The different notice forms are necessary because FLSA class members will need to affirmatively opt-in to the settlement, while California class members will automatically be included unless they choose to opt-out. *Id.* at 9-10. Having also satisfied the notice requirements listed above, the parties' proposed class notice plan is approved.

Turning to the issue of settlement administration, the parties have agreed that a third party, Simpluris, will administer the class notice process. SA ¶ 35. Specifically, Simpluris will prepare individualized class notice forms, perform an initial national change of address search, use standard skip-tracing devices to obtain forwarding addresses for old addresses, mail class notice to putative class members via first-class US mail, track undelivered notices, process any exclusion requests, establish a settlement fund, administer payments, and establish a toll-free number to take inquiries from class members. *Id.* ¶¶ 20, 35, 38, 41, 47. The Court finds that Simpluris is qualified to perform the tasks associated with administering the notice plan and approves Simpluris as the administrator. The parties ask to have $25,000 allocated from the gross

United States District Court
Northern District of California

settlement fund to pay for settlement administration costs. *Id.* ¶ 35. While this amount is higher than many class action settlements that the Court reviews, the parties have agreed that any leftover money shall revert to the class fund, which is acceptable to the Court.

## V.     MOTION FOR ATTORNEYS' FEES AND COSTS

The settlement agreement provides that Plaintiff will file a motion for attorneys' fees equal to twenty-eight percent (28%) of the gross settlement amount and costs of $15,000. *Id.* ¶¶ 24, 25. Defendant has agreed not to oppose said motion. *Id.* To enable class members to review class counsel's motion, class counsel has included language in the settlement notices indicating the deadline for filing the attorneys' fees motion, stating the deadline for any class member objections to the fees motion, and informing class members that the motion and supporting materials will be available for viewing by request from the Claim Administrator or class counsel. *See* Dkt. No. 66 Exs. 1 & 2. That motion will be filed with the Court and posted on the settlement website not later than 20 days before class members' objections are due.

## VI.    CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's motion for preliminary approval of class and collective action settlement. Finding no need for an additional preliminary approval hearing, the Court **SETS** the following schedule:

| Event | Date |
|---|---|
| Deadline to Provide Settlement Administrator with Class Member Database | February 20, 2017 |
| Deadline for Settlement Administrator to Send Class Notice, Opt-In Forms, and Exclusion Forms (where applicable) | March 2, 2017 |
| Deadline to File Motion for Attorneys' Fees, Costs, and Incentive Award | April 7, 2017 |
| Deadline to Submit Objections | May 1, 2017 |
| Deadline  for California Members to Opt-Out | May 1, 2017 |
| Deadline for FLSA Members to Opt-In | May 1, 2017 |
| Deadline to File Motion for Final Approval | May 12, 2017 |
| Final Fairness Hearing and Hearing on Motions | June 8, 2017 |

**IT IS SO ORDERED.**

Dated: 2/6/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

12