UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY VAN KEMPEN,<br><br>Plaintiff,<br><br>v.<br><br>MATHESON TRI-GAS, INC.,<br><br>Defendant. | Case No. 15-cv-00660-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 73, 75 |

Pending before the Court is Plaintiff Roy Van Kempen's ("Plaintiff") motion for final approval of a class action settlement, individually and on behalf of the settlement class as defined herein, as well as Plaintiff's unopposed motion for attorneys' fees, costs, and an enhancement award. Dkt. Nos. 73, 75. The proposed settlement will resolve Plaintiff's wage-and-hour claims against Defendant Matheson Tri-Gas, Inc. ("Defendant") under the Fair Labor Standards Act, 29 U.S.C. § 207, et seq. ("FLSA"), and various California statutes. Having carefully considered the arguments of the parties, the Court **GRANTS** Plaintiff's motions for the reasons set forth below.

I. **BACKGROUND**

A. **Factual Allegations and Procedural History**

Defendant employed Plaintiff as an hourly, non-exempt delivery driver of industrial and medical gases. Dkt. No. 48 ("Van Kempen Decl.") ¶¶ 3-4. In his operative complaint, Plaintiff alleges that Defendant intentionally failed to include the non-discretionary bonuses he received in calculating his rate of overtime pay. On that basis, Plaintiff claims that Defendant systematically underpaid his overtime wages in violation of § 207(a)(1) of the FLSA and § 510 of the California Labor Code. Dkt. No. 26 ("Am. Compl.") ¶¶ 38-39, 49. Plaintiff further alleges that Defendant had a "use-it-or-lose it" vacation time policy by which accrued vacation time was automatically

forfeited if not used within a specified time period. *Id.* ¶ 65. Plaintiff claims that this vacation-time policy violated California Labor Code § 227.3. *Id.* ¶ 66.[1] These claims are asserted in both Plaintiff's individual capacity and on behalf of all other persons similarly situated. *Id.* ¶ 9.

Defendant removed this action from state court under federal question, diversity, and Class Action Fairness Act jurisdiction. Dkt. No. 1 & Ex. A. In this Court, Plaintiff amended his initial complaint to add new state law claims and propounded formal and informal written discovery on Defendant. *See* Dkt. Nos. 26 & 49 ("Hague Decl.") ¶¶ 4, 13. The parties then participated in a private mediation before a retired state court judge, and the case settled. *Id.* ¶ 5; Dkt. No. 42.

Plaintiff filed an unopposed motion for preliminary approval of class and collective action settlement on January 10, 2016. *See* Dkt. No. 45. The Court denied Plaintiff's motion on August 1, 2016. *See* Dkt. No. 57. In its decision, the Court (1) granted provisional class certification of the nationwide FLSA overtime class, and California overtime and vacation classes, *see id.* at 12; (2) appointed Plaintiff as class representative, *id.*, and Sutton Hague Law Corporation as class counsel, *id.* at 13; and (3) denied preliminary settlement approval due to the proposed FLSA opt-in agreement and release language, *id.* at 14, 16. The Court also noted problems with several other portions of the proposed settlement agreement, including its (1) provision of preferential treatment to Plaintiff, *id.* at 16-17; (2) failure to explain whether the California overtime class would receive settlement payments within the range of possible approval, *id.* at 17; (3) failure to specify whether certain claims fall within the related class action settlement described below, *id.* at 18; and (4) failure to specify which putative class members would receive the proposed notice forms and why, *id.* at 20.

### B. Related Class Action Settlement

Before turning to the terms of the proposed settlement agreement, the Court addresses the class action settlement in a partially overlapping lawsuit, *Ambriz v. Matheson Tri-Gas, Inc.*, No. 2:14-cv-04546 (C.D. Cal. Feb. 4, 2016).[2] In that case, the plaintiffs, who were also employed as

---

[1] Plaintiff's other asserted claims are not included in the proposed settlement, as explained below.
[2] Plaintiff previously requested judicial notice of materials from the *Ambriz* action, including the motion for preliminary approval of class action settlement, the operative complaint, and a declaration filed in support of preliminary approval. Dkt. No. 50 & Exs. 1-3. Plaintiff also

2

delivery drivers by Defendant, asserted a variety of wage-and-hour claims under California law. Dkt. No. 50, Ex. 2. The parties entered into a class action settlement, as to which the Court granted final approval before the original settlement motion in this case was heard by this Court. Dkt. No. 54 ¶ 4.

The *Ambriz* settlement class includes "all current and former drivers who were employed by Defendant from March 5, 2010 through June 25, 2015." Dkt. No. 55, Ex. 1 ¶ 2. It releases, by the account of the parties to this action, every claim asserted in the operative complaint except for "those causes of action related to unpaid accrued vacation days and unpaid overtime based on a miscalculation of the regular rate of pay." Dkt. No. 46 at 7; *see also* Dkt. No. 50, Ex. 3 ¶¶ 52-53; *see also* Dkt. No. 66 at 7. The instant settlement, therefore, purportedly functions only to "fill gaps" in the *Ambriz* settlement. *See* Dkt. No. 46 at 1, 7.

### C. Overview of the Proposed Settlement

With this background in mind, the Court now describes the key terms of the proposed class action settlement in this case. *See* Dkt. No. 60, Ex. 1 ("SA").

<u>Class Definitions</u>: There are three groups of proposed class members: (1) an FLSA overtime group, comprised of all current and former non-exempt employees of Defendant nationwide who worked overtime while entitled to non-discretionary bonus pay and who opt in to the group; (2) a California overtime class, comprised of all current and former non-exempt employees of Defendant in California who worked overtime while entitled to non-discretionary bonus pay and who do not opt out of the settlement; and (3) a California vacation-time class, comprised of all persons employed by Defendant in California who accrued vacation time but forfeited it. *Id.* ¶ 8. The class period for all three proposed classes runs from January 9, 2011, through the date that the Court enters final approval of the collective and class action settlement. *Id.* ¶ 10. In total, the parties estimate that there are approximately 2,400 putative class members.

---

submitted two supplemental declarations of counsel that attach the minute order and order granting final approval of the class action settlement in *Ambriz*. Dkt. Nos. 54 & 55, Exs. 1-2. In its previous order denying the parties' motion for preliminary approval, the Court took judicial notice of these materials to the extent they explained the procedural posture of this case, but not for the truth of the matters asserted therein. *See* Dkt. No. 57 at 2 n.2.

*Id.* ¶ 9.

Monetary Relief: Defendant will pay a gross total of $370,000 to resolve this action, less attorneys' fees up to $103,600 and up to $15,000 in litigation costs, a $5,000 incentive award for Plaintiff, settlement administration costs not anticipated to exceed $25,000, and 75% of the $5,000 penalty under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2699. *Id.* ¶¶ 23-28. Based on these assumptions, the parties estimate that the putative classes will receive a total of $217,650. *Id.* ¶ 34(a). Fifty-two percent of this amount is allocated to the FLSA nationwide and California overtime classes. *Id.* ¶ 33. The remaining 48% is allocated to the California vacation class. *Id.* Each individual putative class member's payment within each proposed class will be calculated by dividing the net settlement amount by the total number of weeks that all members of the relevant proposed class worked during the class period and then multiplying that number of compensable workweeks that the individual worked. *Id.* ¶ 34(b)(i). Regardless of the outcome of this formula, each putative class member will receive a monetary payment of at least $25. *Id.*

*Cy Pres* Recipients: Settlement checks left uncashed for 180 days by California class members will revert to California's Division of Labor Standards Enforcement unclaimed wage fund. *Id.* ¶ 34(b)(vii). Settlement checks similarly left uncashed by FLSA class members will revert in equal part to the Employee Rights Advocacy Institute for Law & Policy and the UCLA Institute for Research on Labor and Employment. *Id.*

Release: There is both a class and individual component to the proposed release. Putative class members would release "any and all applicable claims . . . which were asserted in the Action or could have been asserted against the Released Parties based on the claims, matters, transactions or occurrences referred to in the operative Complaint during the Claims Period (hereinafter "Released Claims"). *Id.* ¶ 66. Released Claims also include "claims under or pertaining to the Fair Labor Standards Act . . . any and all PAGA penalties or other relief under California Business and Professions Code Section 17200 et seq. [that could have been raised in the operative Complaint] . . . and all rights under California Civil Code Section 1542." *Id.* Plaintiff, as class representative, would release these same claims. *Id.* ¶ 69. In addition, the agreement states that "[i]t is understood and agreed that the [settlement] will not release Named Plaintiff from claims, if

4

any, for worker's compensation, unemployment, or disability benefits of any nature." *Id.* ¶ 69.

Class Notice: The parties intend to send class notice packages to all last-known addresses of putative class members by US mail within fourteen calendar days of the Court's order granting preliminary approval. *Id.* ¶¶ 38, 39. As part of that class notice package, there are two different class notice forms. *See* Dkt. No. 66 Exs. 1 & 2. One notice is for nationwide FLSA overtime putative class members and the other is for California putative class members. *Id.* at 9-10.

Opt-Out & Opt-In Procedures: Putative members of the California overtime and vacation classes have the right to opt out of the settlement by submitting a request for exclusion form within 60 days after the settlement administrator transmits class notice. SA ¶ 47. If five percent of either the California overtime or vacation putative classes opt out of the settlement, Defendant shall have the unilateral right to terminate the settlement agreement. *Id.* ¶¶ 42.

Putative members of the FLSA class must affirmatively opt in to participate in the FLSA settlement, as required by 29 U.S.C. § 216(b). *Id.* ¶ 43. FLSA overtime putative class members must opt in by submitting a Claim Form to the Claims Administrator not later than 60 calendar days from the mailing of the Notice Packet. *Id.*; *see also id.* ¶ 32.

Class Representative and Class Counsel: Plaintiff has been appointed class representative and Sutton Hague Law Corporation has been appointed class counsel. *See* Dkt. No. 57 at 12-13.

Incentive Award: Plaintiff seeks a $5,000 incentive award as class representative. SA ¶ 26.

Attorneys' Fees and Costs: Class counsel will seek attorneys' fees equal to 28% of the gross settlement amount and litigation costs up to $15,000. *Id.* ¶¶ 24, 25. Defendant does not oppose this request. *Id.* If the Court awards attorneys' fees and costs equal to less than the requested amount, the difference will revert to the net settlement amount. Dkt. No. 82 ¶ 23(a)(4).

**II. ANALYSIS**

    **A. Final Settlement Approval**

        **i. Class Certification**

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that

would affect the Court's reasoning have changed since the Court provisionally certified the nationwide FLSA overtime and California overtime and vacation classes under FRCP 23(a) and (b) on August 1, 2016, this order incorporates by reference its prior analysis under Rules 23(a) and (b). *See* Dkt. No 57 at 12. This order also incorporates by reference its previous provisional certification of Plaintiff as class representative, and Sutton Hague Law Corporation as class counsel. *Id.* at 13. The Court affirms its previous findings and certifies the aforementioned settlement classes, class representative, and class counsel. *See id.* at 13.

### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ."). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed

6

settlement is fair, adequate, and reasonable, and that class members received adequate notice.

> a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

The Court finds that the notice and notice plan previously approved by the Court, Dkt. No. 67 at 11; Dkt. No. 70 at 2, was implemented and complies with Rule 23(c)(2)(B). The Court ordered that third-party settlement administrator, Simpluris, send class notice via first-class mail to each class member at their last known address, as provided by Defendants. Dkt. No. 67 at 11. In addition, the Court ordered Simpluris to prepare individualized class notice forms, perform an initial national change of address search, use standard skip-tracing devices to obtain forwarding addresses for old addresses, track undelivered notices, process any exclusion requests, establish a settlement fund, administer payments, and establish a toll-free number to take inquiries from class members. *Id.* Simpluris states that class notice was provided as directed, having mailed notice packets to 2,348 class members via first class mail on April 19, 2017. *See* Dkt. No. 75-3 ¶ 7. Of the 2,348 packets disseminated, 96 notices were returned as undeliverable. *Id.* ¶ 8. Simpluris then performed skip-tracing on those 96 addresses and located updated addresses for 85 class members. *Id.* Simpluris was ultimately unable to locate current addresses for 11 class members. *Id.* Simpluris received no objections to the settlement and eleven valid requests for exclusion from the California opt-out only class, equal to 2.81% of that class. *Id.* ¶ 10. In addition, Simpluris

received 220 valid claims to opt-in to the FLSA settlement class, equal to 11.21% of that class. *Id.* ¶ 9. In total, "there are 498 Participating Class Members who will be paid their portion of the Net Settlement Amount." *Id.* ¶ 12. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiff's Case, Risk of Further Litigation, and Risks of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

This action reached settlement before the Court had an opportunity to consider the merits of the claims. Yet "Plaintiff's counsel estimates that if Plaintiff were to prevail on all his claims at trial, the probable expected recovery for the Settlement Class would not be likely to exceed approximately $400,000 before attorneys' fees and costs." Dkt. No. 75-1 at 9. "The $370,000 Gross Settlement Amount [therefore] represents approximately 90 percent of the Settlement Class's total potential recovery in this case, and the $217,650 Net Settlement Amount represents approximately 54 percent of the total potential recovery, and is offered without the risk of continued litigation." *Id.* Furthermore, "Plaintiff acknowledges the difficulties of proving damages, recognize[s] the uncertainty of the outcome, . . . believe[s] defendant would appeal in

the event of adverse judgment," and recognizes the "risk that the Court may not have certified some or all of Plaintiff's claims for class treatment." *Id.* at 10, 11. In reaching a settlement, Plaintiff has thus ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. The class here will receive a "$370,000 Gross Settlement Amount represent[ing] approximately 90 percent of the Settlement Class's total potential recovery in this case, and [a] $217,650 Net Settlement Amount represent[ing] approximately 54 percent of the total potential recovery." Dkt. No. 75-1 at 9. This is in line with another recent wage and hour class action settlement in this district. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finally approving "$1,000,000 settlement fund represent[ing] between 25.4 percent and 8.5 percent of Defendant's total potential liability exposure."). Based on the facts in the record and the parties' arguments at the preliminary approval and final fairness hearings, the Court finds that the settlement amount thus weighs in favor of final approval.

### 3. Extent of Discovery Completed and Stage of Proceedings

The Court finds that class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "Settlement in this case was only reached after extensive discovery and exchange of information" over a "roughly two-and-a-half year[]" period. Dkt. No. 75-1 at 3. Throughout that time, "Plaintiff conducted extensive written discovery," "exchanged thousands of pages of documents that were used to evaluate the strengths and weaknesses of the case and the potential Class damages," and "participated in an intensive, arms-length mediation" with highly qualified mediators. *Id.* The Court thus finds that the parties have received, examined, and analyzed information, documents, and materials that sufficiently enabled them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

####  4. Experience and Views of Counsel

The Court next considers the experience and views of counsel, and finds that this factor also weighs in favor of approval. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (internal quotation marks omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the classes' interests in this action. *See* Dkt. No. 57 at 13. "After thorough discovery, investigation and briefing regarding Plaintiff's claims, Class Counsel believes the instant settlement is in the best interests of the Settlement Class Members." Dkt. No. 75-1 at 12. The Court notes, however, that courts have taken divergent views as to the weight to accord counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.") *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved."). Accordingly, although the Court finds that this factor weighs in favor of approval, the Court affords only modest weight to counsel's views.

####  5. Governmental Participation

This factor is irrelevant to the Court's analysis because no governmental entity participated in this matter.

####  6. Reaction of Class Members

The reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on each class member in accordance with the methods approved by the Court, advised the class of the requirements regarding objections and exclusions. *See* Dkt. Nos. 67 at 10-12, 75-3. The deadline to file opt-outs, opt-ins, and objections was May 1, 2017. Dkt. No. 67 at 12. Simpluris received no objections to the settlement, but did receive eleven valid requests for exclusion from the California opt-out only class, equal to 2.81% of that class. Dkt. No. 75-3 ¶¶ 10, 11. In addition, Simpluris received 220 valid claims to opt in to the FLSA settlement class, equal to 11.21% of that class. *Id.* ¶ 9. The Court finds that the absence of objections and low number of opt-outs indicates support among the class members, constitutes a positive reaction, and weighs in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected). The relatively low response as to the FLSA class also does not weigh against approval, as those individuals who chose not to opt in to the settlement will not release any claims. In addition, as Plaintiff notes, "the FLSA opt-in rate does not change the non-reversionary structure of the Settlement, in that all of the Net Settlement Amount will [nevertheless] be distributed to the participating Settlement Class Members." Dkt. No. 75 at 13. The Court thus finds that this factor weighs in favor of approval.

\* \* \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiffs' motion for final approval of class action settlement is **GRANTED**.

### B. Motion for Attorneys' Fees and Costs

In its second unopposed motion, class counsel asks the Court to approve an award of $103,600 in attorneys' fees and $7,674.55 in costs. Dkt. Nos. 74 at 4, 78 at 5. Class counsel also seeks a $5000 incentive award for the named Plaintiff for his assistance in this case. *Id.*

### i. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either the (1) percentage-of-the-fund, or (2) lodestar method when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (*citing Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

"[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal quotation marks omitted). Generally, "the relevant community is the forum in which the district court sits." *Id*. (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in

previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although "the choice between lodestar and percentage calculation depends on the circumstances, . . . either method may . . . have its place in determining what would be reasonable compensation for creating a common fund." *Id.* To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

Here, class counsel seeks twenty-eight percent of the settlement amount, which is slightly above the twenty-five percent benchmark for a reasonable fee award. *See* Dkt. No. 74 at 4. To justify this upward departure, class counsel states that this figure is still less than its attorneys' fees would be under the lodestar method. *See id.* at 5.

To calculate its lodestar, class counsel contends that it has expended a combined 314.2 hours on this case. Dkt. No. 73-2 at 6.[3] One attorney requests a billing rate of $800 per hour for 40.3 hours of work, one attorney requests a billing rate of $580 per hour for 168.4 hours of work, and two attorneys request billing rates of $300 per hour for 92.1 and 13.4 hours of work respectively. *Id.* Applying these rates to these hours, Plaintiffs calculate the lodestar to be $172,922. *Id.* However, by the Court's calculation, 40.3 hours of work at a rate of $800 per hour equates to $32,240, and a total lodestar of $161,612. Nevertheless, class counsel seeks an award of $103,600, and "assert[s] that the fees sought are reasonable because they represent a discount compared to the [] lodestar in this matter—in other words, a negative multiplier." *Schuchardt*, 314 F.R.D. at 690; *see also* Dkt. No. 74 at 5. Class counsel initially based its support for each attorney's hourly rates on the *Laffey* matrix—"a chart reflecting the market rates for attorneys' fees incurred in complex litigation in the District of Columbia"—and other state court actions. *See* Dkt. No. 74; *Ruiz v. JCP Logistics, Inc.*, NO. SACV 13-1908-JLS (ANx), 2016 WL 6156212, at

---

[3] While class counsel indicated that it had spent a combined 327.75 hours on this case as of August 8, 2017, counsel did not indicate how the additional hours were spent. The Court declines to award attorneys' fees for the preparation of class counsel's supplemental declaration addressing attorneys' fees, however, Dkt. No. 80, as the information in that declaration should have been provided as part of the original motion for attorneys' fees. The Court will therefore only consider the original fees request for 314.2 hours of work.

13

*9 (C.D. Cal. Aug. 12, 2016). The Court thus requested supplemental briefing, Dkt. No. 77, which class counsel provided, Dkt. Nos. 78, 80, 82.

Having reviewed class counsel's supplemental filings, the Court finds that the billing rates used by class counsel to calculate the lodestar are reasonable and generally in line with prevailing rates in this District for personnel of comparable experience, skill, and reputation. *See Guerrero v. California Dept. of Corrs. and Rehabilitation*, No. C 13-05671 WHA, 2016 WL 3360638 (N.D. Cal. June 16, 2016) (awarding hourly rates between $750-$775 for partners and lead counsel in complex federal litigation case with approximately thirty years of experience, $658 per hour for a partner with eighteen years of experience, and $325-$358 per hour for associates with five and six years of experience, respectively). In addition, having carefully reviewed the documentation provided by class counsel, the Court finds that the number of hours expended in this action was reasonable given the length of the case and its procedural posture. While class counsel's proposed hourly rates may be slightly above average for this district, the Court finds that any concerns regarding the rates class counsel used to calculate its lodestar are tempered by the fact that class counsel's actual fee request is significantly lower—by approximately forty percent—than the calculated lodestar. The Court thus **GRANTS** class counsel's request for attorneys' fees in the amount of $103,600.[4]

### ii. Attorneys' Costs

Class counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation marks omitted). Class counsel seeks reimbursement of $7,674.55 in litigation costs. *See* Dkt. Nos. 74 at 4, 78 at 5.

Plaintiff originally submitted the declaration of Brett Sutton, a partner with class counsel, indicating that class counsel incurred a total of $7,667.35 in litigation-related costs and expenses. Dkt. No. 73-2 ¶ 23. But class counsel did not initially itemize their purported expenses incurred

---

[4] While the Court awards class counsel attorneys' fees in the amount of $103,600, due to an oversight with regard to administrative costs, class counsel proposed defraying any additional administrative costs in part by reducing their total awarded attorneys' fees. The Court grants that request, and reduces class counsel's total awarded attorneys' fees to $98,432, as discussed below.

14

during this case to allow the Court to evaluate whether the costs were reasonable and properly expended. *See Gaudin v. Saxon Mortgage Servs., Inc.*, No. 11-CV-01663-JST, 2015 WL 7454183, at *9 (N.D. Cal. Nov. 23, 2015). Consequently, the Court ordered class counsel to file an itemization of class counsel's expenses. *See* Dkt. No. 77. Class counsel filed an itemized list on August 2, 2017 that included one additional copying cost, bringing the total costs requested to $7,674.55. Dkt. No. 78 at 5. Having reviewed the additional documentation, the Court is satisfied that these costs were reasonably incurred and **GRANTS** in full the motion for costs in the amount of $7,674.55.

### iii. Settlement Administration Costs

Class counsel seeks $37,500 for the costs of class administration conducted by Simpluris, despite having informed class members in the notice that administration costs "not to exceed $25,000" would be deducted from the $370,000 settlement fund. Dkt. Nos. 75-1 at 14, 75-3 at 3. Simpluris' duties included: sending class notice via first-class mail to each class member at their last known address, as provided by Defendants, preparing individualized class notice forms, performing an initial national change of address search, using standard skip-tracing devices to obtain forwarding addresses for old addresses, tracking undelivered notices, processing any exclusion requests, establishing a settlement fund, administering payments, and establishing a toll-free number to take inquiries from class members. Dkt. No. 67at 11. Class counsel contends that "the costs of administration slightly exceeded the anticipated $25,000 threshold due to the costs associated with tax filings in the various states in which the FLSA Group is location," which class counsel and the settlement administrator failed to initially account for. Dkt. No. 75-1 at 4. Because "Class Counsel's costs are approximately $7,332 below the $15,000 threshold" initially allocated for them, class counsel proposes that "$7,332 of the $12,500 difference between the $25,000 threshold for administration costs and the $37,500 final amount be allocated from the amount [set] aside for Class Counsel's costs." *Id.* "With respect to the remaining $5,168 of administration costs, Plaintiff proposes that such amounts be deducted from Class Counsel's attorneys' fees." *Id.* Defendant does not oppose these proposals, *id.*, and the Court finds them reasonable.

15

Courts regularly award administrative costs associated with providing notice to the class. *See, e.g.*, *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429, at *11 (N.D. Cal. May 19, 2016); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015). Given the scope of Simpluris' administrative duties in this case, the Court concludes that Simpluris' costs were reasonably incurred for the benefit of the class and grants the full amount of $37,500, with $7,332 awarded from the attorneys' costs allocation, and $5,168 awarded from class counsel's attorneys' fees award of $103,600.

### iv. Incentive Award

Class counsel requests a service award of $5000 for named Plaintiff, which Defendants also do not oppose. *See* Dkt. No. 74 at 4. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotation omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

Here, the Court finds that Plaintiff added substantial value to this case. Class counsel asserts that Plaintiff has been "instrumental in securing the immediate settlement by actively participating in pre-litigation investigative efforts, [and] propounding and responding to discovery." Dkt. No. 74 at 4. In addition, class counsel contends that Plaintiff has spent more than 25 hours working on the case since it was filed in 2015, and that Plaintiff participated in

regular meetings with class counsel to discuss case strategy and to review drafts of pleadings, discovery, and settlement documents. Dkt. No. 73-1 ¶ 10. Because numerous courts have found that a $5,000 incentive award is "presumptively reasonable" in the Ninth Circuit, the Court grants Plaintiff the $5,000 award. *See*, *e.g.*, *Smith*, 2016 WL 362395, at *10 (rejecting $7,500 incentive award where class members were estimated to receive $1,608.16); *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (rejecting $11,000 incentive award where class members were estimated to receive between $600 and $4,000); *Ko v. Natura Pet Prod., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (awarding $5,000 incentive award for 50–100 hours in contributions over two-year litigation).

### v. PAGA Fees

The Settlement Agreement allocates $5,000 to settle PAGA claims, with 75% of that amount to be paid to the LWDA, and 25% to be distributed as part of the settlement awards. Dkt. No. 75-1 at 14. This allocation is in line with another case in this district. *See Chu v. Wells Fargo Investments, LLC*, Case Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011) (approving $7,500 PAGA allocation out of $6.9 million common fund settlement, with 75% to be paid to the LWDA and 25% to be paid to the fund). The Court therefore approves the proposed $5,000 PAGA allocation.

//

## III. CONCLUSION

For the foregoing reasons it is hereby ordered that:

1. Plaintiff's Motion for Final Approval of Class Action Settlement and Plaintiff's Motion for Attorneys' Fees and Costs are hereby **GRANTED**.
2. The Court approves the settlement amount of $370,000, including payments of attorneys' fees in the amount of $98,432; costs in the amount of $7,674.55; administration fees in the amount of $37,500; an incentive fee for the named Plaintiff in the amount of $5,000; and a $5,000 PAGA allocation.

The parties and settlement administrator are directed to implement this Final Order and the

settlement agreement in accordance with the terms of the settlement agreement. The parties are directed to submit a joint proposed judgment for approval by September 1, 2017.

**IT IS SO ORDERED.**

Dated: 8/25/2017

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge